(C. D. 288)

J. E. BERNARD & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 1, 1940)

*G. W. R. Wallace; Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Chicago, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation invoiced as sheet filters. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of said act as machines and parts thereof not specially provided for.

Henry Eickemeyer, the importer and ultimate consignee of said merchandise, appeared in person and testified in part as follows:

By Mr. SCHWARTZ:

Q. Describe the article imported.—A. The filter consists of a frame, or skeleton, in which are inserted plates, and between those filter plates you insert filter sheets. In order to operate the filter you need a pump to press the liquid through. By this means you overcome the resistance in the filter and remove the suspended matter, and then the liquid leaves the filter clarified.

Q. Were these two articles, both the same or different?—A. In principle, they are the same.

Q. What was the difference?—A. Just in size. One is a six sheet filter and the other is a twelve sheet filter.

Q. What do they filter?—A. Wines, whiskeys, fruit juices, vinegar.

At this juncture a photograph of the filter in actual operation was admitted in evidence as Illustrative Exhibit A, and a printed picture of the filter in a catalog published by the manufacturer was admitted in evidence as Illustrative Exhibit B. The witness drew a circle around the filter itself on Illustrative Exhibit A and marked it X, and similar circles around the connecting pump and filling machine, marking them respectively Y and Z. He then described the operation of the entire apparatus as follows:

A. The man who operates the device is operating the filling machine. He keeps adjusted the pressure on the inlet side of the filter. In other words, he watches that the pressure does not go too high.

* * * A. Because the force from the pump might make the pressure go beyond the limit, and therefore he has to keep it adjusted by keeping the throttle of the filter inlet down.

* * * A. The filter sheets, the inserted sheets, naturally offer resistance to the liquid and without the pump force those sheets would not deliver the liquid to the bottle filling machine. * * *.

On cross-examination the witness testified in part as follows:

X Q. All the power that is generated in this filtering machine is from the pump; isn't that right?—A. Yes.

*    *    *    *    *    *    *

X Q. The power of the pump in the tank forces the liquid into the filter?—A. No. The pump sends the liquid out of the tank into the filter.

X Q. The filter is no mechanical device, the filter itself?—A. The filter, itself, no.

X Q. And after the liquid comes from the filter then it goes into another machine known as a filling machine or a bottler?—A. Yes.

The Government offered in evidence the testimony of Charles Kruszewski, formerly United States Treasury representative in Berlin, Germany, who testified that he had visited the factory in Germany where the imported filters were manufactured. He then testified in part as follows:

Q. What does the filter consist of?—A. Well, the main thing, as I was told in the factory and as I have seen, is the sheets in the filter, itself. * * * The filter requires certain auxiliary apparatus. For instance, it requires a pump to transport the liquid into the filter, as such, and it may require certain other auxiliary apparatus depending upon what you want to do with the liquid. You may want to clarify or purify it, as you call it. And it also requires another apparatus in order to fill your liquid into the containers at hand.

Q. Those auxiliary parts or machinery, are they part of the filter, itself?—A. I have observed that you can import them separately. I understand in some cases the auxiliary parts are made in this country and the filter proper is imported. And I understand you can also buy the entire outfit as you would like it.

*    *    *    *    *    *    *

Q. The strainer, itself, or the filter, itself, does not require any generating power, does it?—A. Well, it does. In order to work this filter you have to have some kind of pressure put to your liquid in order to take it through the filter.

Q. Is this pressure which you get furnished by an outside apparatus?—A. Yes, exactly because you can see it from here. Here is a connecting pipe. There is a connection on the auxiliary apparatus.

*    *    *    *    *    *    *

Q. It is possible to pour the liquid on by hand, on the filter machine?—A. Not on that kind. It would be very difficult with that.

Q. Can't you just pour the liquid on it by hand, on the filter paper?—A. No, I don't think in this case you can.

Upon this record counsel for the plaintiff contend that the sheet filters in their imported condition are mechanical contrivances for utilizing energy or force, and therefore are machines within the tariff meaning of the term. We do not agree with this contention. But counsel also contend that these sheet filters are essential parts of a larger apparatus which is a machine and that therefore the imported filters are parts of a machine not specially provided for within the

meaning of said paragraph 372. We believe that the record fairly supports that contention.

On the other hand counsel for the Government cites the decision in the case of *United States* v. *National Folding Box Co.*, 24 C. C. P. A. 316, T. D. 48756, as here controlling. It appears in that case the appellate court had before it the question of the tariff classification of an apparatus described by the only witness who appeared therein as a large funnel-shaped affair which separated water from paper pulp by gravity, and which was operated in connection with two pumps. In holding that the apparatus was not a machine within the meaning of said paragraph 372, the court, referring to the record in the case, said:

On this record the court below stated that—

While it may be true, and the record so establishes, that the funnel-shaped filter, as imported, has no moving mechanical parts, and therefore of itself may not be considered a mechanical contrivance such as would be deemed a complete machine, it is equally a fact that it is an integral part of an appliance or apparatus which comprises a pump which is a mechanical contrivance, and that when the two are connected they constitute a complete machine    *    *    *.

and, upon the authority of the case of *United States* v. *Sheldon & Co.*, 15 Ct. Cust. Appls. 308, T. D. 42484, held that the involved device was an integral part of a machine, because it was used in conjunction with two pumps which in themselves were machines.

If the facts of record were in accordance with the views expressed in the decision of the trial court, we would have no difficulty in concurring in the court's conclusion.

It is perfectly obvious from an examination of the record that the device, standing alone, is not a machine. In fact, counsel for appellee do not claim that it is. Counsel contend, however, that it is a part of a machine, and that the other parts consist of "pumps" which work in conjunction therewith.

The burden was upon the importer to establish that the device in question and the pumps used in conjunction therewith were integral or constituent parts of each other, and that the whole constituted a machine. That it failed to do.

In other words, there is nothing of record to show any different relationship existing between the "pumps" and the involved device, than there is between an ordinary water pump and an ordinary water tank, and we venture the suggestion that no one would contend that such a water pump and such a water tank were integral or constituent parts of each other.

In the instant case, however, the testimony of both witnesses discloses that the filters in question are integral parts of complete mechanisms or devices for filtering liquids, and that the pumps which are physically connected with the filtering devices are absolutely necessary for the operation of the same. In other words, the record shows that in each case the pump is an essential feature in the operation of the filtering device and is physically connected therewith.

Upon the established facts and the law applicable thereto we hold that the sheet filters constituting the imported merchandise at bar are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as parts of machines not

specially provided for, as alleged by the plaintiff. That claim is therefore sustained, but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.